

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

| | | |
|---|---|---|
| Angela Wood | : | Civil Action |
| Plaintiff | : | No. _____ |
| | : | Federal Question Complaint under 28 U.S.C. |
| Vs | : | §1331(a), pursuant to Bivens v. Six Unknown |
| | : | Named Agents of Federal Bureau of Narcotics |
| Andre Matevousian, M.A. Stancil; and | : | 403 U.S. 388 (1971); the Federal |
| B. Eischen, being sued in their individual | : | TORT Claims Act under 28 U.S.C. §1346(b) |
| Capacities; and The United States of America | : | and §2671 et. seq., and the Administrative |
| | : | Procedure Act (APA) under 5 U.S.C. §706(2)(A)-(D) |
| Defendants. | | |

<u>Complaint with Jury Trial Demand</u>

This is a Federal "Bivens" question and simultaneous Administrative Procedure Action ("APA") both submitted under 28 U.S.C. §1331(a); in addition to the Federal TORT Claims Act ("FTCA) pursuant to 28 U.S.C. §1346(b) and §2671 et. seq., alleging liability of the United States Government filed by the Plaintiff, Angela Wood, a resident of the State of Colorado and United States Citizen; suing for monetary damages involving First Amendment Constitutional Violations of Freedom of Speech, Freedom of Expression, Freedom of Peaceful Assembly and Freedom of Association; The Due Process and Equal Protection Clauses; monetary damages under the FTCA for Respondeat Superior/ Negligent Supervision; and Injunctive relief under §1331(a) and The APA's Title 5 U.S.C. §701-706(2)(A)-(D).

<u>Jurisdiction</u>

1. The Court has jurisdiction over the Plaintiff's claims of violation of Federal Constitutional rights under 28 U.S.C. §1331(a).  <u>Bivens v Six Unknown Named Agents of the Federal Bureau of Narcotics,</u> 403 U.S. 388 (1971).

2. The Court has jurisdiction over the Plaintiff's Federal TORT claims under 28 U.S.C. §1346(b) and §2671 et. Seq., alleging liability against The United States Government. <u>(see Richards v. United States,</u> 369 U.S. 1,6 (1962).

3. The Court has jurisdiction over the Plaintiff's claims for injunctive relief under 28 U.S.C. §1331(a) and 5 U.S.C. §702. <u>California v. Sanders,</u> 430 U.S. 99, 105 (1977)

<u>Parties</u>

4. The Plaintiff, Angela Wood, is a United States Citizen and upstanding member of her community and as a resident of the State of Colorado (P.O. Box 674, Canon City, CO 81215).

5. The defendant, M.A. Stancil was employed as the Institutional Warden at USP Florence – High, located at 5880 State Highway 67, Florence, Colorado 81226, during the times and events alleged in this complaint where he was personally and directly involved with acts or omissions which give rise to and formed the basis of this lawsuit. M.A. Stancil is being sued in his individual capacity.

6. Defendant Andre Matevousian, was employed as the Complex Warden at FCC Florence, located at 5880 State Highway 67, Florence, Colorado 81226, during the times and events alleged in this complaint where he was personally and directly involved with acts or omissions which give rise to, and formed the basis of this lawsuit. Andre Matevousian is being sued in his individual capacity.

7. Defendant B. Eischen, who is currently employed as the Associate Warden at FCI Florence, located at 5880 State Highway 67, Florence, Colorado 81226, however was so employed at USP Florence during the times and events alleged in this complaint where he was personally and directly involved with acts or omissions which give rise to, and formed the basis of this lawsuit. B. Eischen is being sued in his individual capacity.

8. Defendant, the United States of America is being sued for the negligent or wrongful acts or omissions of the above described government employees in paragraphs 5-7, herein, while acting within the scope of their office or employment under circumstances where the United States, if a private person, would be liable to the Plaintiff in accordance with the law of the place where the respondent superior (negligent supervision incidents occurred). 28 U.S.C. §1346 and §2671 et seq., permits suit in federal court for the United States governments liability under the FTCA. See also Keller v. Koca, 111 P-3d 445, 448 (Colo. 2005) (Citing DeStefano v. Grabrian, 763 P-2d 275, 286-88 (Colo. 1988).

Facts

9. In May & December 2018, The Plaintiff founded the email address cyberteam411@gmail.com and cyberbizz@yahoo.com.

10. In December 2018, the Plaintiff successfully registered the cyberteam411 email address on gmail.com.

11. In May 2018, the Plaintiff successfully registered the cyberbizz email address on yahoo.com.

12. Based on the number of people with serious mental illnesses and social issues who are incarcerated in the Federal Bureau of Prisons ("FBOP") being on the rise, as well as a community and national issue, the Plaintiff registered both cyberteam411@gmail.com and cyberbizz@yahoo.com on the website www.CORRLINKS.com in mid-year end 2018.

13. By having successfully registered both cyberteam411@gmail.com and cyberbizz@yahoo.com on the website CORRLINKS.com, incarcerated men and women in the FBOP would feel free to reach out personally to the Plaintiff if they also desired to engage in social dialogue with Plaintiff.

14. The Trust Fun Limited Inmate Computer System ("TRULINCS") is the FBOP Inmate Computer Network that provides incarcerated men and women in the FBOP access to multiple services. At no time do the inmates have any access to the internet.

15. FBOP inmates are allowed to access various dedicated TRUINCS workstations installed in the inmates housing units/common areas that enables them to perform many different functions or services using their thumb-print scan, register number, phone access code ("PAC") and four digit commissary personal identification number ("PIN") to successfully log on to the users terms and agreements screen that an inmate must accept in order to use functions and services in TRULINCS, that include:

  a. Account transactions – this service allows inmates to search and view their commissary, telephone and TRULINC account transactions, as well as view their audio media list/purchases.
  b. Bulletin Board – this service is used by the Prison Administration Staff to post notifications to the inmate general population within the institution and disseminating information to the general population.
  c. Inmate Telephone System TRUFONE – with this service each inmate is provided a nine-digit "PAC" number for accessing TRUFONE, including instructions for using the system. The PAC is confidential and should not be shared with other inmates. Each inmate must perform voice verification registration and confirmation to place a call on his/her approved phone list. Management of telephone numbers are done via TRULINCS.
  d. Law Library – this service allows inmates to perform legal research.
  e. Manage Funds – this service allows inmates to manage their personal funds by creating/cancelling requests for withdrawls of Inmate Personal Funds (BP-199) and manage their Pre-Release Account / Funds.
  f. Print – this service allows inmates the opportunity to print various documents only marked for print within TRULINCS. Mailing labels and BP-199 forms may be printed for free. However, all other documents can be printed at a cost.
  g. Survey – this service allows inmates to take Bureau Surveys (i.e. Institution Character Profile).
  h. Request to staff – this service allows inmates to correspond with staff electronically. The list of available departments varies by institution; however, there is a standard DOJ Sexual Abuse Reporting mailbox available that provides inmates with an additional method of reporting allegations of sexual abuse and harassment directly to the Office of Inspector General (OIG).
  i. Manage TRU-Units – this service allows inmates to electronically purchase TRU-units using available funds from their main commissary account and allow the redemption of purchased TRU-units.

j. Prescription Refill – this service allows inmates to request prescription refills via TRULINCS of self-carry medications that are ready for refill directly to the pharmacy. Pharmacy staff will receive the prescription and inmates must follow institutional rules for when and where to pick up requested prescriptions.

k. Public Messaging – this service allows inmates to correspond with friends and family in the community electronically. "Public messaging" is a restricted version of email that will only permit text messages and 0 attachments. There is a cost per minute for that the FBOP charges inmates for using this service. At no time do the inmates have any access to the internet. When an inmate inputs a desired email address they wish to be approved to communicate with electronically via TRULINCS, the TRULINCS System automatically sends a system generated "Inmate Email Request" to the desired email address which notify the email user to go to www.CORRLINKS.com to accept the FBOP Generated TRULINCS notice email prior to receiving any messages from the inmate.

l. It is left up to a family or community member if they choose to accept or reject the inmate's request for email contact approval.

m. When a positive response is given by a family or community member to communicate electronically with an inmate in the FBOP, they have to officially Register / Sign up on the www.CORRLINKS.com and accept CORRLINKS Terms and Use Agreements before exchange of electronic messaging with the FBOP inmate may begin.

n. When a negative response is given by a family or community member (which includes not going to the CORRLINKS website as directed in the TRULINCS generated email message) the inmate cannot send or receive any messages from that email address.

o. Inmates at USP/FCC Florence, Colorado are provided with a copy of the institution's Admissions and Orientation Handbook, which lists information contained in paragraphs 14-15, herein, in effect always relevant to allegations in this complaint (A/O Handbook dated 3/22/2018).

16. The website CORRLINKS is owned and operated by The Advanced Technologies Group ("ATG") and functions where public users of CORRLINKS can communicate with incarcerated men and women in the FBOP electronically, as long as compliance with the websites Terms and Agreements are fully adhered to.

17. TRULINCS is the FBOP inmate Computer Network System hosted by CORRLINKS that encourages email invite from the inmates in the FBOP that is directed towards socially useful goals, if the inmate first agrees and abides by TRULINCS Terms and Agreement Acknowledgement.

18. The warning prompt provides that, "this computer system is the property of the United States Department of Justice. The Department may monitor any activity on the system and search and retrieve any information stored within the system by accessing and using this computer, I am consenting to communication on or about information stored within the system".

19. TRULINCS "Responsibility" prompt to FBOP inmates each time logging on the computer system provides, "I must abide by all terms prescribed in the Bureau of Prisons Policy regarding my use of TRULINCS and electronic messaging systems, which I acknowledge having read and

understood.  I understand and consent to having my electronic messages and system activity monitored, read and retained by authorized personnel.  I understand and consent that this prevision applies to electronic messages both to and from my attorney or other legal representatives, and that such electronic messages will NOT be treated as privileged communications, and that I have alternative methods of conducting privileged legal communication. I will NOT share passwords and will log off the system when leaving the TRULINCS terminal.  I am only authorized to use the TRULINCS and electronic messaging systems to communicate with those persons on my authorized contact list; check account balances; complete forms; access the electronic law library; purchase music and other TRULINCS functions.  My use of TRULINCS in violation of the procedures may result in inmate disciplinary action and/or criminal prosecution.  Any grievance I may have related to the TRULINCS program may be raised through the Bureau's Administrative Remedy Program."

20. TRULINCS "Acknowledgement" prompt to FBOP inmates each time logging on to the computer system provides, "By Accessing the system, I understand and agree to all the above provisions and consent to have the Bureau withdraw all required program fees directly from my deposit fund account.  My participation in the electronic messaging and music programs is voluntary and I may decline participation or except as provided in the procedures related to fees.  In the absence of electronic messaging program participation, I may still maintain contact with persons in the community through written correspondence, telephone and visiting, as provided in those relevant Bureau Policies.  The Warden may discontinue my participation in the electronic messaging program or reject incoming/outgoing messages, whenever it is determined that my participation violates the procedures or otherwise jeopardizes the safety, security or good order of the institution, or protection of the public; or discontinued at anytime due to system unavailability unrelated to my participation conduct.

21. By Fall Season of 2018, the Plaintiff had received and accepted over 100 TRULINCS generated email notifications combined on cyberteam411@gmail.com and cyberbizz@yahoo.com from FBOP inmates at USP Florence, Florence, Colorado, including but not limited to inmate Matthew Sifuentes, Roderick Ridley, Otagus Coverson, DeShay Stevenson, Jason Bowers and Terry J Colley.

22. The Plaintiff's email acceptance of individuals at USP Florence were in strict compliance and adherence to CORRLINKS User Terms and Agreements.

23. The Plaintiff had no group discussions, message forwarding or any type of chat communications with inmates at USP Florence but instead only exchanged individual email communications per one inmate at a time and the Plaintiff had no reason to believe that any of the inmates knew each other.

24. The website CORRLINKS did not prohibit, nor did TRULINCS instruct public users regarding any rule limitation of the number of TRULINCS requests that could be accepted and contacts maintained. The website Corrlinks is designed where the Plaintiff, a public user, can manage hundreds or thousands of approved TRULINCS contacts submitted by FBOP inmates.

25. The TRULINCS system owned by The United States Department of Justice and managed by The FBOP is designed where inmates can exchange email communication with the identical email address if the public user accepts and approves the inmates TRULINCS generated email request notification.

26. The TRULINCS system does not prohibit or instruct inmates that it is a violation of the system or FBOP Policy to communicate with the same approved public email contact.

27. The CORRLINKS website and TRULINCS system are intended to be compatible in purpose and scope that is directed at establishing and encouraging electronic correspondence between the public and inmates incarcerated in the FBOP that promote socially useful goals that are authorized according to each system's respective terms and agreements.

28. Based on the positive email exchanges with FBOP inmates via CORRLINKS, the Plaintiff registered "CyberServices, Inc" as a business in the State of Colorado as a services provider company.

29. In November of 2018, Terry J. Colley, one of the FBOP inmates that was an approved CORRLINKS contact, mailed the Plaintiff a disturbing letter that informed a new complex warden was taking over FCC Florence and that his name was Andre Matevousian, who hailed himself to be an FBOP Imperialist and Human nightmare to friends and family of those registered on CORRLINKS and approved on TRULINCS.

30. After December 2018, the Plaintiff received no more emails from Terry Colley or other inmates of USP Florence from cyberteam411@gmail.com and cyberbizz@yahoo.com email accounts. The Gmail and Yahoo providers were functioning properly from other FBOP institutions where Plaintiff had approved email contacts, but everything from USP/FCC Florence were not transmitting, going or coming.  The CORRLINKS website had not restricted either registered email address, but rather confirmed that both email accounts appeared to be in good standing on CORRLINKS.

31. In mid-December 2018, the Plaintiff received a letter from Taquila Williams, the daughter of inmate Terry J. Colley, informing the Plaintiff that Complex Warden Andre Matevousian and institutional Warden of USP Florence M.A. Stancil had the TRULINCS computer system under seize and had some how managed to program the TRULINCS network system to block all further email communications between inmates at FCC/USP Florence and the Plaintiffs email addresses that were legally registered on CORRLINKS.com

32. Enclosed in Taquila Williams letter to the Plaintiff, described in paragraph 31, herein, was a two page U.S. Department of Justice – Federal Bureau of Prisons memorandum dated December 3, 2018, from Andre Matevousian, Complete Warden, to FCC Florence Population and the subject was: Inmate TRULINCS Services ("Matevousian Memo").

33. The Matevousian memo identified in paragraph 32, herein, provided in pertinent part that, "Effective Monday, January 7, 2019. The inmate TRULINCS services will be strictly monitored. The following is to be corrected prior to the effective date. Failure to comply with the institutions TRULINCS regulations and procedures may result in institutional disciplinary actions and/or services limitations imposed by the Warden:

- **An inmate's approved contact list may not contain the immediate family member, friend, or other contact that is also on any other inmates approved contact list. Exceptions will be made for attorney's, clerks of court, and other contacts approved on a case-by-case basis. This limitation applies to phone numbers, email addresses and physical addresses.**
- **All contact names on an inmate's contact list are required to be recorded accurately. Nicknames, slang terms, aliases or anything other than the contact's full legal name will not be accepted.**
- **When adding contacts to the contact list, the relationship status is to accurately reflect the contact being added.**

**Pursuant to Program Statement ("PS") 4500.12, Trust Fund/Deposit Fund Manual, (March 14, 2018), Section 14.3, Responsibilities, Section d(2) and the TRULINCS and Electronic Messaging Terms of Use, you agreed to abide by all terms prescribed in the BOP's policies regarding your use of TRULINCS and the electronic messaging system. Those terms include, but are not limited to, communicating only with those persons on your authorized contact list. These persons must have accepted your request to communicate with them. Moreover, PS 4500.12, Section 14.10, TRULINCS Services Section c(3) prohibits you from exchanging emails with unauthorized contacts including but not limited to, victims, witnesses, and/or other persons connected with the inmate's criminal history.**

**Additionally, the terms of use allow the Warden to discontinue your participation in the electronic messaging program, or reject incoming/outgoing correspondence pursuant to PS 5265.14, Correspondence (Apr. 5, 2011) and C.F.R. § 540.10 et seq., whenever it is determined that your participation violates the terms of use or otherwise jeopardizes the safety, security or good order of institution , or protection of the public. As a reminder, your misuse of TRULINCS and electronic messaging system may result in inmate disciplinary action and/or criminal prosecution.**

**Should you have any questions, you may address them to the trust Fund Supervisor or the Associate Warden of Programs.**

34. Friends and family members of those incarcerated at USP/FCC Florence who were CORRLINKS and TRULINCS approved email contacts were blocked from writing the Plaintiff letters, calling the Plaintiff using the TRUFONE system and emailing Plaintiff from TRULINCS system as early as December 13, 2018.

35. Inmates at USP / Florence who were caught printing physical mailing labels of this Plaintiffs writing address were harassed by institutional Warden M.A. Stangil by encumbering their inmate accounts and increasing their court ordered fines/restitution from $25.00 per 3 months

to $250.00 – 500.00 per month and refusal to sign new contracts resulted in TRULINCS suspension.

36. In March of 2019, the Plaintiff called to the USP Florence by telephone to speak with Warden Stencil about the 100% blocking of Plaintiff's email addresses and written correspondence to inmates at USP Florence, but he was unavailable.

37. The rejection mail by USP Florence continued, inmates were blocked from inputting Plaintiffs telephone number in the TRUFONE system and printing mailing labels in order to write the Plaintiff.

38. B. Eischen, the Associate Warden at USP Florence made it known that he was ensuring enforcement of the email blocks to the Plaintiffs email address because it was suspicious for someone in the public to accept different inmate email requests without elaborating why it was suspicious.

39. Inmate Terry Colley at USP Florence, who was blocked from emailing the Plaintiff, pursued bureau administrative remedies (remedy ID #966033-Fl and 966034-Fl)  Staff response was that the Plaintiffs email addresses violates BOP Safety and Security Policy by using 3rd party email and/or circumvent the BOP's Safety and Security Procedures of the BOP by way of 3rd party contacts

40. On May 2, 2019, the FBOP – North Central Regional Office received this Plaintiff's Freedom of Information Act / Privacy Act (FOIA/PA) request for copying and/or inspection of 18 non-publicly available Agency Documents, including the December 3, 2018 "Matevoisian Memo."

41. The BOP North Central office refused to disclose or produce for copying and inspection of relevant agency documents surrounding institutional supplements ("Matevousian memos"), index of administrative remedies specifically identified by the Plaintiff by remedy I.D. # and documents under the control of the FBOP. See FOIA/PA Request #2019-03712.

42. On June 17, 2019, the Plaintiff filed a Freedom of Information Act appeal for FOIA/PA Request number 204-3712, to the Director, Office of Information Policy (OIP), in which is still pending or was denied.

43. On or about July 24, 2019, the Plaintiff submitted an SF-95 Administrative Tort Claim to the North Central Regional Office of the FBOP where the incidents in this complaint occurred on or about December 13, 2018 (within 2 years), pursuant to 28 F.F.R. §14.2(a), accompanied by Claim of Respondent Superior/negligent supervision and abuse of executive power.  The executed standard form 95 was also accompanied by a claim for money damages in the amount of $500,000.00.  See TRT-NCR-2020-00259.

44. On November 12, 2019, The Bureau of Prisons denied the SF-95 form described in paragraph no. 43, herein, by having sent Plaintiff the denial by certified mail, receipt#7015 0640 0005 8894 1705 regarding TORT claim TRT-NCR-2020-00259.

45. The Plaintiffs email address are still being blocked on the FBOPs TRULINCS system and inmates are still prohibited from contacting the Plaintiff by email, writing or telephone, as they are subject to disciplinary punishment.

## First Amendment Violation of Peaceful Assembly

46. Before the Plaintiff's emails (cyberteam411@gmail.com and cyberbizz@yahoo.com) were institutionally blocked by the defendant, on or about December 13, 2018, the Plaintiff was successfully assembled with general population inmates at USP/FCC Florence (Colorado), on the well-established communications networks CORRLINKS (owned by the Advanced Technologies Group) and TRULINCS (owned by the U.S. Department of Justice) public messaging platforms principally designed and engineered for electronic messaging capabilities exclusively between public users such as the Plaintiff and the federal inmate populations nationwide.

47. Both Plaintiff's email addresses described in paragraph 46, herein, were already approved and functioning on CORRLINKS and TRULINCS respective computer system networks before. They were purposefully blocked by defendant Matevousion on or about December 13, 2018.

48. Both computer system networks ("CORRLINKS and TRULINCS") are technologically designed with optimum compatibility and promotion of commercial, public and mass social engagement specifically between public users like the Plaintiff and FBOP inmate populations that both computer networks are so "inextricably intertwined" that the collective interests of CORRLINKS and TRULINCS users share common interests or objectives to associate and engage in social, political, economic, environmental, educational, religious and cultural postures that encompass the First Amendment protections that are particularly important with respect to written policies of encouraging the public to electronically communicate with FBOP inmates on TRULINCS.

## First Amendment Violation / Freedom of Expression

49. After the email addresses were institutionally blocked on the TRULINCS system on or about December 13, 2018,by defendant Matevousian, the Plaintiff's capability to electronically communicate with approved FBOP inmates on TRULINCS at USP/FCC Florence politically, socially, economically, educationally, religiously, and culturally was ended by said institutional blocks.

50. The email blocks occurred close in time to Congress and President Trump passed the First Step Act on December 21, 2018; a matter of political, legislative, and social concern to the community that was legitimate news interests, such as, a subject of general interests to the public and of value and concern to FBOP inmates in which the First Step Act only applied to, that

the Plaintiff could not have an expressive association with because the defendants blocked both email address on TRULINCS on or about December 13, 2018, just days earlier, the adverse action, constituting temporal proximity, intervening antagonism or retaliatory animus and inconsistent reasons for taking adverse action.

51. The retaliatory aspect of the defendant's actions was motivated by well-established policy considerations, that encompassed the context that both CORRLINKS and TRULINCS had been given regulatory content and form that the associational conduct brought about activity within the protection of the First Amendment, supporting inferences of causality. The risk and assessment tool implemented by the First Step Act impacts FBOP inmates that the Plaintiff was approved to email before being blocked. The creation of the "Prisoner Assessment Tool Targeting Estimated Risk and Needs", known as "Pattern" was announced in July 2019, and is, in essence, a predictive tool designed to gauge recidivism for all BOP inmates, which the Plaintiff is restricted from communicating with on this dynamic tool. The blocking of Plaintiff's email communications prevented the distribution of information to inmates about "CyberServices, Inc" that they could have exchanged with family and friends.

## First Amendment Violation / Freedom of Association

52. The Plaintiff and inmate Terry J. Colley, Reg #45043-019 was approved to exchange email correspondence through CORRLINKS and TRULINCS Network Systems prior to the December 3, 2018 "Matevousian Memo," as with the many other blocked inmates at USP/FCC Florence. Both CORRLINKS and TRULINCS provided and promoted email "associational platforms" for public users like the Plaintiff and FBOP inmates like Terry J. Colley, although both network systems are limited versions of email, but as long as system user terms are followed and being complied with, then the freedom of association would not be obstructed or blocked.

53. However, inmate Terry J. Colley, and other blocked inmates housed at USP/FCC Florence, Colorado, filed Bureau of Prisons Administrative Remedies Challenging defendant Matevousian' s December 13, 2018 institutional email blocks of cyberteam411@gmail.com and cyberbizz@yahoo.com.

54. On January 7, 2019 and January 9, 2019, defendants Stancil and Eischen's enforcement of the email blocks, enforced through informal and formal administrative remedy processes responded in writing to inmate Colley that both email addresses "Violates BOP Safety and Security Policy by using 3rd party email."

55. To the contrary, the Plaintiff was not cited, warned, sanctioned or even suggested by ATG on CORRLINKS that non-compliance or violation of any public user terms or agreement was not abided by.

56. Additionally, Terry J. Colley, and other FBOP inmates at USP/FCC Florence, who Plaintiff was approved to email, were not sanctioned or cited via disciplinary action whatsoever for violating BOP Safety and Policy by using any alleged 3rd party email. There was absolutely no conduct

committed by the Plaintiff on CORRLINKS that was prohibited by Public User Agreement.  There was absolutely no conduct committed by any inmate approved to email with Plaintiff exhibited violations of TRULINCS User Terms or agreement.

## Matevousian Memo void for Vagueness

57. Institutional staff response that Plaintiff's email addresses "violates BOP safety and security policy by using 3ʳᵈ party email " is based on enforcement and interpretation of the December 3, 2018 "Matevousian Memo."  The Matevousian memo clearly does not improve, nor is consistent with plain language issued on CORRLINKS and TRULINCS regulating User Terms and Agreements.  Based on both system networks, the user can feel free to use each email function authorized by the system terms, but institutional staff and the December 3, 2018 Matevousian memo" failed to provide ordinary understanding or reasonable opportunity to understand how strict compliance with CORRLINKS and TRULINCS written user terms violates 3ʳᵈ party email.

58. When defendant Matevousian issued the December 3, 2018 memorandum described in paragraphs 32 and 33, herein, he failed to provide ordinary meaning or reasonable opportunity for anyone except him and USP/FCC Florence Staff to understand how strict compliance with written terms and CORRLINKS and TRULINCS violate 3ʳᵈ party email. He therefore, authorized and encouraged arbitrary and discriminatory enforcement of that memorandum which gives rise to the alleged constitutional violations."

59. The "Matevousian Memo" states that it will become effective on "January 7, 2019."  However, this Plaintiff's email addresses were blocked on TRULINCS by defendant before the effective date.  "In which still did not explain how suddenly both CORRLINKS and TRULINCS technology engineering and system network programs constituted "prohibited conduct."

60. Because CORRLINKS and TRULINCS are so "inextricably intertwined" both networks were designed with Technological sophistication that enhances FBOP staff ability to strictly monitor all email activity sent by public users to TRULINCS and by FBOP inmates from TRULINCS to CORRLINKS.

61. All emails sent by Plaintiff to TRULINCS were sent from CORRLINKS directly via cyberteam411@gmail.com or cyberbizz@yahoo.com.  All emails received by Plaintiff from FBOP inmates came directly from TRULINCS.  No emails by Plaintiff to TRULINCS involved discussions about other inmates at USP/FCC Florence.  All emails received from TRULINCS came only from the inmate Plaintiff was approved to email.

62. When defendant Matevousian blocked both email addresses, the block was enforced by defendants Stancil and Eischen which extended to potential disciplinary action for inmates caught printing mailing labels to write the Plaintiff, as well as physically blocked from calling Plaintiff on the Inmate Telephone System (ITS), in reliance upon the Matevousian memo" and Administrative Remedy Responses that 3ʳᵈ party rule violations justified the above action.

## Fifth Amendment Violation / Equal Protection

63. The December 3, 2018 "Matevousian Memo" was not distributed or enforced FBOP wide, only enforced against inmates at USP/FCC Florence Colorado, but defendants Matevousian, Stancil and Eischen, which the Plaintiff was the primary target of the block because many inmates FBOP wide were approved to exchange email communications and the only institution that blocked this Plaintiff's approved emails were the above defendants at USP/FCC Florence. The Plaintiff could send inmates emails to other FBOP Institution inmates except USP/FCC Florence. The Plaintiff could receive emails from inmates at all other FBOP Institutions who were approved to email, except from USP/FCC Florence before they were blocked.

64. Before the defendants blocked the Plaintiff's email addresses on TRULINCS, on or about December 13, 2019, there was and still are Service Providers, Information Marketers, and hundreds of various companies selling products and business services to inmates on TRULINCS. There are hundreds of inmates approved on TRULINCS that send and/or receive emails from Sure Shot Book Publishers, Geremy Gordon, Craig Coscalrelli, and "Thousands more" that the defendants are aware of, but have not blocked these approved contacts email addresses, mailing labels, or telephone numbers. These hundreds and thousands of approved contacts or email addresses were registered through CORRLINKS before being approved on TRULINCS. The same identical process cyberteam411@gmail.com and cyberbizz@yahoo.com complied with, but were blocked and still are blocked as violation of safety and security to the BOP.

## Due Process / Pre-Deprivation Remedies Violation

65. By defendant Matevousian' s publication of his December 3, 2018 Memorandum to FCC population inmates, he was making it known to TRULINCS users that he opposes both CORRLINKS and TRULINCS user terms and agreements as written by The Advanced Technologies Group ("ATG") and the Department of Justice ("DOJ").

66. Rather than defendant Matevousian taking up his personal disagreement with ATG or the DOJ, he instead issued the "Matevousian Memo" that took effect immediately and placed FCC Florence inmates under direct threat of disciplinary action by failing to comply with the December 3, 2018 memo, despite being totally inconsistent and contrary to the system network functions and terms of both CORRLINKS and TRULINCS.

67. The Technological and Engineering that make up both CORRLINKS and TRULINCS Network Systems were created by Computer and Digital Transformation Programmers that the ATG and DOJ owners were aware of when implementing the systems, but without providing Plaintiff with pre-deprivation due process, the defendants blocked email addresses cyberteam411@gmail.com and cyberbizz@yahoo.com on the TRULINCS system network as being a threat to safety and security to the BOP that violates 3rd party email.

68. The December 3, 2018 memorandum does not reflect the views of National Policy regarding the FBOP's implementation and purpose for TRULINCS, but demonstrate the creating of supplemental institutional policy which identifies a different TRULINCS operations designed to ban this Plaintiff's email addresses without affording a hearing in advance.

## Variation of Administrative Procedure Act 5 U.S.C. 702

69. The defendant's decision to supplement the TRULINCS system language with that of the December 3, 2018 "Mateviousian Memo" Regulations confused its meaning (TRULINCS), was an arbitrary and capricious abuse of discretion under 5 U.S.C. §706(2)(A) of the APA.

70. The "Matevousion Memo" extended supplemental institutional policy beyond the plain meaning of TRULINCS terms, purpose and agreement, thereby creating a new regulation without complying with the rule promulgation procedures established in the APA (5 U.S.C. §551 et. Seq.) The "Mateviousian Memo" took affect immediately, almost a month earlier when stated that illegal acts would be enforced.

71. The "Matevousian Memo" is not part of the BOP's officially promulgated regulations applicable to the TRULINCS network system established for federal prisoners incarcerated in BOP institutions and the family and friends of federal prisoners incarcerated in BOP institutions. Therefore, the Matevousian memo is invalid because its regulations was not promulgated pursuant to the notice and comment provisions of the APA and denied Plaintiff of due process by not giving such a Pre Deprivation remedy before blocking Plaintiff's email addresses on TRULINCS as a threat to safety and security of BOP policy for 3rd party email, prohibiting inmates from emailing Plaintiff and blocking the Plaintiff's email from reaching USP/FCC inmates at Florence, Colorado.

## Respondeat Superior/Negligent Supervision

72. The Plaintiff submitted Respondeat Superior/Negligent Supervision claims to the North Central Regional Office for the FBOP regarding defendants Matevousian, Stancil and Eischen's wrongful actions in blocking email addresses cyberteam411@gmail.com and cyberbizz@yahoo.com on TRULINCS, in which the United States Government is liable for the defendants acts or omissions which were committed within the scope of their employment at USP/FCC Florence, Colorado.

73. The Plaintiff submits that for purposes of this federal tort claim action, "Scope of Employment" is defined the Respondeat Superior / Negligent Supervision Law of the State where the incident occurred.

74. Under Colorado law, an employee is acting within the scope of his/her employment if doing work assigned to them by their employer, or what is necessarily incidental to that work, or customary in the employer's business.

75. The "Matevousian Memo" was justified as supplemental institutional policy, but when supplemental institutional policy violates the Administrative Procedure Act, the Federal Tort Claims Act and the United States Constitution, The United States have a clear duty to act; a suite against the United States Supplemental institutional policy cannot override National Policy, only improves it under 28 U.S.C. §2679(b)(1), a suite against the United States is the exclusive remedy for persons with damages resulting from the negligent or wrongful acts of federal employees taken within the scope of their employment.

## Claim for Relief

76. The actions of defendant Matevousian, Stancil and Eischen in implementing and current enforcement of the December 3, 2018 Memorandum that effectuated the institutional blocks of this Plaintiff's email addresses on the FBOP's TRULINCS system at USP/FCC Florence, Colorado violated Plaintiff's rights and freedom of speech, expression, assembly and association under the first amendment to the United States Constitution.

77. The actions of defendant Matevousian, Stancil and Eischen described in paragraph 76, herein, violated the Plaintiff rights to due process of law and equal protection of the law under the fifth amendment to the United States Constitution.

78. The actions of defendant Matevousian, Stancil and Eischen described in paragraph 76, herein, constituted the Tort of Respondeat Superior and Negligent Supervision that rendered the United States Government liable for the defendants acts or omissions committed within the scope of the defendants employment at USP/FCC Colorado.

79. The actions of the defendants described in paragraph 76 herein violated the void for Vagueness Doctrine under the Due Process Clause to the fifth amendment.

80. The actions of the defendants described in paragraph 76, herein violated the Administrative procedure Act under 5 U.S.C., Section 706(2)(A) and § 551 et. Seq., by not promulgating the "Matevousian Memo "in compliance with the notice and comment provisions of the Administrative Procedure Act.

<u>Requested Relief</u>

Wherefore, Plaintiff requests that the court grant the following relief:

A. Issue an Injunction ordering the defendants, or their agents to remove the email address blocks to Plaintiff's email addresses cyberteam411@gmail.com and cyberbizz@yahoo.com on the FBOP's TRULINCS Network.

B. Award Compensatory Damages in the following accounts:
   1. *$100,000.00 individually against defendants Matevousion, Stancil and Eischen as a result of* the First Amendment violations.
   2. $100,000.00 individually against defendants Matevousion, Stancil and Eischen as a result of due process and equal protection violations.
   3. $500,000.00 against the United States Government for the Torts Respondent Superior / Negligent Supervision

C. Award punitive damages in their following amounts:
   1. $50,000.00 each against Matevousion, Stancil and Eischen.

D. Grant such other relief as it may appear that plaintiff is entitled.

Date this 3rd day of May, 2020

_____

Angela Wood – Plaintiff
P.O. Box 674
Canon City, CO 81215

Angela Wood
308 Bellows Ct
Canon City, CO 81212

PLACE STICKER AT TOP OF ENVELOPE TO THE RIGHT
OF THE RETURN ADDRESS, FOLD AT DOTTED LINE

**CERTIFIED MAIL**



7019 2970 0000 4590 2506




U.S. POSTAGE PAID
FCM LG ENV
CANON CITY, CO
81212
MAY 04, 20
AMOUNT

**$4.95**

R2304N118285-11

1023          80294

United States District Court
901 19th Street Rm 105
Denver, CO 80294

